948 P.2d 1367 (1997)
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION; and D & S Casing Service, Inc., Appellants (Petitioners),
v.
James P. BERGERON, Appellee (Respondent).
No. 95-93.
Supreme Court of Wyoming.
December 15, 1997.
*1368 William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; and Jennifer A. Evans, Assistant Attorney General, Cheyenne, for State ex rel. Wyoming Workers' Compensation Division.
Douglas M. Lesley of Drew & Carlson, Gillette, for D & S Casing Service, Inc.
George Santini, Cheyenne, for Appellee.
Before THOMAS, MACY, TAYLOR and LEHMAN, JJ., and O'BRIEN, District Judge.
O'BRIEN, District Judge.
This worker's compensation case involves interpretation of Wyo. Stat. § 27-14-407 (1997), which provides for the forfeiture of benefits if an injured worker's conduct tends to retard his recovery. The case was certified to this court by the First Judicial District Court upon a petition for review of an order awarding benefits entered by the Office of Administrative Hearings. We reverse and remand the award of benefits.
The parties agree that a legal issue is presented in this appeal. The facts, as found by the hearing examiner, are not in dispute.
While at work for D & S Casing Service, Inc., James P. Bergeron (Bergeron) injured his right hand. Two surgeries were performed on his hand, the first to make repairs and a second for reconstructive purposes. The latter surgery was performed on June 13, 1994 because Bergeron "was quite bothered by the malposition of the [middle] finger." Approximately two weeks after the reconstructive surgery, Bergeron was incarcerated in the Laramie County, Wyoming jail, where he remained for four months awaiting trial.
Bergeron was not a model prisoner. From the start, he was obstreperous and obnoxious. During the administrative process of booking him into the jail, Bergeron threatened the jailors and offered to aggravate the condition of his injured hand, which had surgical pins protruding through the skin and was immobilized by a half splint held in place by an elastic bandage. Because of his aggressive behavior, Bergeron was twice maced during the booking. That inauspicious beginning did not auger well for his tenancy. Predictably, his nettlesome behavior persisted, at least until the end of July 1994. Bergeron continued to threaten and attempt to injure himself. He picked at his stitches and the surgical pins. He banged his injured hand against the walls or objects within the cell. He drank cleaning solution and liquid soap. He smeared feces on the cell door and window. Not surprisingly, his hand became infected and he was taken to the hospital for treatment.
The Workers' Compensation Division (the Division) thought Bergeron was undermining his recovery within the meaning of Wyo. Stat. § 27-14-407, which provides:
If an injured employee knowingly engages or persists in an unsanitary or injurious practice which tends to imperil or retard his recovery, or if he refuses to submit to medical or surgical treatment reasonably essential to promote his recovery, he forfeits all right to compensation under this act. Forfeiture shall be determined *1369 by the hearing examiner upon application by the division or employer.
Accordingly, the Division suspended benefits. An administrative hearing followed.
The hearing examiner concluded that Bergeron's acts were the likely cause of the infection to his hand and found the evidence to be clear and convincing that his acts in the jail carried the potential for harm. The hearing examiner also considered evidence regarding the causal effect of those acts. Bergeron's treating physician, Dr. Slater, saw him a number of times during his incarceration. Dr. Slater noted the following: at the end of June 1994, Bergeron had not damaged his injured hand; on July 14, there was some, not unusual, swelling but the repaired bone was in good condition; on August 11, the hand was fairly well healed and recovery was on schedule; on September 27, the final visit, Bergeron was well healed. Dr. Slater did not see Bergeron when he was taken to the hospital on July 26 to deal with the infection and the Division did not pay for treatment. Because Bergeron was left with a small amount of deformity, Dr. Slater assessed the surgical results as less than optimal. Dr. Slater offered three possible explanations for the diminished result, including self-injury, but could not assign self-injury as the cause.
Based upon the foregoing, the hearing examiner found that Bergeron's recovery was not retarded by his self-injurious activities. Upon those facts, and concluding that Stanolind Oil & Gas Co. v. Harvey, 52 Wyo. 349, 75 P.2d 1 (1938) required proof of actual retardation of recovery rather than merely a potential for that result, the hearing examiner ordered benefits to be paid. In Stanolind Oil & Gas Co., 75 P.2d at 2, this court, in interpreting the predecessor statute,[1] said:
The statute states a rule in regard to avoidable consequences. It was intended to prevent compensation for disability resulting from unreasonable conduct of the injured workman. We have held that the burden is on the employer to prove that the workman's recovery had been retarded by a persistence in injurious practices, the ground of forfeiture stated in the first clause of the statute.
(Emphasis added.)
When the legislature has spoken in unambiguous terms, we are bound to the results so expressed. In City of Cheyenne v. Reiman Corp., 869 P.2d 125, 127-28 (Wyo. 1994), we discussed the plain meaning rule of statutory construction, saying:
For some forty years, this court has espoused and followed, frequently, the rule that we do not resort to rules of statutory construction and interpretation when the language of a statute is plain and unambiguous. E.g., Thunder Basin Coal Co. v. Study, No. 93-45, 1994 WL 2811 (Wyo. Jan. 7, 1994) [866 P.2d 1288 (Wyo.1994) ]; Wyoming State Tax Comm'n v. BHP Petroleum Co., Inc., 856 P.2d 428 (Wyo.1993); Jackson State Bank v. King, 844 P.2d 1093 (Wyo.1993); Hasty v. Hasty, 828 P.2d 94 (Wyo.1992); Phillips v. Duro-Last Roofing, Inc., 806 P.2d 834 (Wyo.1991); Vandehei Developers v. Public Serv. Comm'n of Wyoming, 790 P.2d 1282 (Wyo.1990); Halliburton Co. v. McAdams, Roux & Assoc., 773 P.2d 153 (Wyo.1989); NL Industries, Inc. v. Dill, 769 P.2d 920 (Wyo.1989); Belle Fourche Pipeline Co. v. State of Wyoming, Envtl. Quality Council, 766 P.2d 537 (Wyo. 1988); Wyoming Ins. Dept. v. Avemco Ins. Co., 726 P.2d 507 (Wyo.1986); Thomson v. Wyoming In-Stream Flow Comm., 651 P.2d 778 (Wyo.1982); State, ex rel. Fawcett v. Bd. of County Comm'rs of Albany County, 73 Wyo. 69, 273 P.2d 188 (1954). An unequivocal corollary of that rule is, if the statute is determined to be plain and unambiguous, the words used are to be given their plain and ordinary meaning. BHP Petroleum Co., Inc.; Wyoming Game and Fish Comm'n v. Thornock, 851 P.2d 1300 (Wyo.1993); Vandehei. Our reading of Wyo. Stat. § 15-1-113 leads to the ineluctable conclusion that the statute is plain and unambiguous, and the words used should be given their plain and ordinary meaning.
*1370 We repeated that message in Witt v. State, 892 P.2d 132, 137-38 (Wyo.1995), where we said:
In construing a statute, "the initial step in arriving at a correct interpretation . . . is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." Parker Land & Cattle Co. [v. Wyoming Game & Fish Comm'n], 845 P.2d [1040] at 1042 [(Wyo.1993)] (quoting Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). If the statute's language is clear and unambiguous, we apply its plain meaning and need not consult the numerous rules of statutory construction. Houghton v. Franscell, 870 P.2d 1050, 1054 (Wyo.1994); Parker Land & Cattle Co., 845 P.2d at 1043.
Stripped to its essence, the statute provides for a forfeiture if Bergeron knowingly engaged in an unsanitary or injurious practice which tended to retard his recovery. The words "tends to" suggest a contribution to a result rather than a cause. See Matter of Andren, 917 P.2d 178, 181 (Wyo.1996). While proof of more than a mere possibility is required, the burden is most certainly less than direct causation.
In Stanolind Oil & Gas Co., 75 P.2d at 2, a worker was injured by a blow to his testicles. At issue was whether his pre-injury attempts to self-medicate what he thought was gonorrhea exacerbated his injuries and extended his recovery time. The district court found, upon substantial evidence, that he was not infected. On review, we observed: "With gonorrhea out of the case, the court was almost forced to the conclusion that the disability was caused by the reported injury * * *." Id. at 4. We went on, perhaps too casually, to offer the observation about causal nexus. By suggesting that proof of actual retardation was required, we demanded more than the legislature had ordained. The statement was unnecessary to the decision and was not supported by either the language of the statute or prior case law. As such, it has no value as precedent and, being improvidently uttered, should be corrected. To the extent that the Stanolind Oil & Gas Co. dicta is in conflict with our decision in this case, it is rescinded.
Since the hearing examiner reasonably, but erroneously, relied upon that dicta and concluded that the employer must prove that the worker's acts actually retarded his recovery, that decision must be reversed. We note the hearing examiner's observation: "The words used in the statute, `tends to imperil or retard,' are words whose literal meaning requires only a potential for harm, as opposed to an actual harm." We caution that more is required than proof of a mere potential for harm or a possibility of harm; there must be proof that the worker's acts were not benign, but did, in some way, contribute to recovery problems. While the record strongly suggests that Bergeron's conduct contributed to a less than optimal result, such a determination is for the finder of fact, not a reviewing court. For that reason, this case is remanded to the hearing examiner for decision as to whether Bergeron's acts tended to imperil or retard his recovery.
The Division suspended benefits when it concluded that the benefits were subject to forfeiture under the injurious practices statute. Bergeron has argued that the Division acted improperly as only the hearing examiner can order a forfeiture. That issue is not properly before this court, but may be considered on remand.
Reversed and remanded.
NOTES
[1] At that time, forfeiture occurred only if an employee persisted in injurious practices. It has since been expanded to provide for forfeiture when an employee engages or persists in such conduct. Then, as now, the statute called for a forfeiture if the employee's conduct tended to retard his recovery.