**PLATTE DEVELOPMENT COMPANY,**
Appellant (Petitioner),

v.

**STATE of Wyoming, ENVIRONMENTAL QUALITY COUNCIL; and Geoffrey Smith, et al., Appellees (Respondents).**

No. 97–269

Supreme Court of Wyoming.

Nov. 6, 1998.

Thomas F. Reese and Jon B. Huss of Brown, Drew, Massey & Sullivan, Casper, Wyoming, for Appellant.

Terri A. Lorenzon, Cheyenne, Wyoming, for Appellee Environmental Quality Council.

Gary L. Shockey of Lawyers & Advocates for Wyoming, Jackson, Wyoming, for Appellees Smith, et al.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Platte Development Company challenges the Environmental Quality Council's interpretation of the statutory definition of "overburden" found in Wyo. Stat. § 35–11–103(e)(iv) (1997) as applied to a small mine permit authorized by Wyo. Stat. § 35–11–401(j) (1997). Finding the Environmental Quality Council's interpretation consistent with the plain language of the statute, we affirm.

## I.  ISSUES

Appellant, Platte Development Company (Platte), presents the following issues on appeal:

A.  Whether the Wyoming Environmental Quality Council ("*EQC*") erred in interpreting the statutory definition of "overburden", in a manner inconsistent with the statutory and regulatory scheme, inconsistent with related statutory provisions, inconsistent with the EQC's own regulations, and inconsistent with the longstanding interpretation and practice of the Wyoming Department of Environmental Quality ("*DEQ*").

1.  Whether the EQC erred in determining that "topsoil" is "overburden" for purposes of Wyo. Stat. § 35–11–401(j) (1997), which prohibits a small mine operator from affecting more than 10,000 cubic yards of overburden per year.

B.  Whether the EQC lacked subject matter jurisdiction to entertain objections to Platte's 1983 small mine permit—which deems topsoil separate and distinct from overburden—over a decade after the permit was issued and the appeals period had expired.

Appellee, the Environmental Quality Council (EQC), phrases the issues as follows:

A.  Did the EQC have subject matter jurisdiction over this dispute.

B.  Did the EQC correctly interpret the statutory definition of the word "overburden" contained in the Environmental Quality Act (the Act) at Wyo. Stat., 1997, § 35–11–103(e)(iv).

Appellees, Geoffrey Smith, et. al., do not offer a statement of issues in their brief.

## II.  FACTS

The predecessor to Platte, also known as Platte Development Company (Old Platte), received a small mine permit in 1983 to mine for gravel in an area outside of Casper, Wyoming known as the Henrie Pit. Under the statutory restrictions governing a small mine permit, the operator is limited to the removal of 10,000 cubic yards of "overburden" each year. Wyo. Stat. § 35–11–401(j). At the time Old Platte submitted its application, the Department of Environmental Quality (DEQ) identified "topsoil" and "overburden" as separate components of the material which would be displaced during the mining process. In the report accompanying the permit, all the material above the gravel was identified as "topsoil," with Topsoil #1 being the top one foot of material and Topsoil #2 being all the salvageable material remaining above the gravel. The DEQ placed no annual volume limitation on the amount of topsoil which could be removed with a small mine permit.

Old Platte extensively mined the Henrie Pit from 1983 through 1989, removing more than 10,000 cubic yards of "topsoil" each year. Between 1990 and 1995, operations

* Chief Justice at time of oral argument and retired 11/2/98.

were severely curtailed due to economic considerations. In 1995, however, the assets of Old Platte were purchased by 71 Construction and Tetral Corporation, which formed a new partnership also called Platte Development Company, the appellant in this case.

Platte reinitiated aggressive mining operations under the same permit issued to Old Platte. Alarmed by the increased activity, the residents of the area, led by Geoffrey Smith, wrote letters of complaint to the DEQ. Learning that a new company was operating under the old permit, the DEQ required Platte to apply for a permit transfer. In response to the complaints, the DEQ conducted an inspection of the mine. By letter dated January 5, 1996, the DEQ issued its report that the mine was in compliance with relevant regulations, the operations had been sufficiently continuous so that the permit remained active, and the current operations did not constitute a public nuisance. On January 30, 1996, the DEQ approved the transfer of the mine permit. The complainants (Smith appellees) formally appealed the DEQ's decision to the EQC on February 1, 1996.

By mid-April 1996, Platte had stripped over 18,000 cubic yards of topsoil and mined over 33,000 tons of gravel. At the request of the Smith appellees, the DEQ director reviewed the initial report, and on June 10, 1996, the director issued a decision affirming the earlier findings. Shortly thereafter, the Smith appellees amended their appeal to the EQC to include a claim that Platte's operations violated the 10,000 cubic yard overburden limit for a small mine. The Smith appellees argued that the DEQ erroneously failed to require that the "topsoil" removed in the mining operations be included in the calculation of "overburden."

The EQC held a lengthy contested case hearing on the numerous issues raised by the Smith appellees, and issued its order on June 25, 1997. While the EQC affirmed many of the DEQ's decisions in favor of Platte, the EQC determined that topsoil is included in the term "overburden" for the purposes of compliance with the restrictions pertaining to small mines. Platte timely appealed only that portion of the EQC's ruling, and the district court then certified the case to this court pursuant to W.R.A.P. 12.09(b). The issue of subject matter jurisdiction is raised by Platte for the first time on appeal.

## III. STANDARD OF REVIEW

Questions of jurisdiction are reviewed *de novo* pursuant to " 'the inherent power, and the duty, to address jurisdictional defects on appeal * * *.' " *Sheridan Retirement Partners v. City of Sheridan*, 950 P.2d 554, 556 (Wyo.1997) (*quoting Pawlowski v. Pawlowski*, 925 P.2d 240, 242 (Wyo.1996) and *Gookin v. State Farm Fire and Cas. Ins. Co.*, 826 P.2d 229, 232 (Wyo.1992)). The absence of subject matter jurisdiction in a district court cannot be waived, and this court can have no greater jurisdiction of the subject matter than the district court. *Sheridan Retirement Partners*, 950 P.2d at 556. Where the district court is without jurisdiction in an administrative appeal from an agency, this court must dismiss the appeal. *Id.*

Review of a case before us pursuant to W.R.A.P. 12.09 is conducted in accord with Wyo. Stat. § 16–3–114(c) (1997). Absent evidentiary dispute, the standard of review is simply stated as whether an agency's conclusions are in accordance with law. *Parodi v. Wyoming Dept. of Transp.*, 947 P.2d 1294, 1295 (Wyo.1997). Our review of statutory interpretation begins with an inquiry into the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged. *Id.; Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 815 (Wyo.1993). If more than one reasonable interpretation exists, we resort to general principles of statutory construction. *Moncrief v. Wyoming State Bd. of Equalization*, 856 P.2d 440, 444 (Wyo.1993) (*quoting Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n*, 845 P.2d 1040, 1044 (Wyo.1993)). When the legislature has spoken in unambiguous terms, however, "we are bound to the results so expressed." *State ex rel. Wyoming Workers' Compensation Div. v. Bergeron*, 948 P.2d 1367, 1369 (Wyo.1997).

## IV. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

As an initial matter, we turn to Platte's contention that the EQC was without subject matter jurisdiction to hear the appeal from the decision of the DEQ. Platte begins with the premise that the timely filing of an appeal from agency action is mandatory and jurisdictional. *Department of Revenue and Taxation v. Irvine*, 589 P.2d 1295, 1301 (Wyo.1979). Platte then notes that the DEQ's rules and regulations require an objection to the issuance of a permit to mine be registered within sixty days of issuance. DEQ Noncoal Rules and Regulations, Chapter I, Section 16(a) (1993). Platte concludes that, because the original mine permit contemplated the removal of over 10,000 cubic yards of topsoil and no objection was made within sixty days of its issuance, the scope of the permit is now unassailable.

■ This argument misstates the subject matter of the appeal before the EQC. The issue was not the issuance of the permit, but whether the DEQ's interpretation of "overburden" was impermissible under the statutory definition. It is axiomatic that an agency has and may properly exercise only those powers authorized by the legislature. *U S West Communications, Inc. v. Wyoming Public Service Com'n*, 958 P.2d 371, 374 (Wyo.1998) (*quoting Tri County Telephone Ass'n, Inc. v. Wyoming Public Service Com'n*, 910 P.2d 1359, 1361 (Wyo.1996)); *Preferred Energy Properties v. Wyoming State Bd. of Equalization*, 890 P.2d 1110, 1113 (Wyo.1995); *Hupp v. Employment Sec. Com'n of Wyoming*, 715 P.2d 223, 225 (Wyo. 1986). An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority. When an administrative agency takes an action that exceeds its authority or proceeds in a manner unauthorized by law, that action is null and void. *Triska v. Department of Health and Environmental Control*, 292 S.C. 190, 355 S.E.2d 531, 533 (1987). As a result, Platte may not rely on the DEQ's interpretation of "overburden" if it does not comport with the language of the statute.

The EQC is the body established by the Wyoming legislature to hear and decide disputes arising from the implementation of the Wyoming Environmental Quality Act (the Act). The EQC is to "[c]onduct hearings in any case contesting the administration or enforcement of any law, rule, regulation, standard or order issued or administered by the [DEQ] or any division thereof[.]" Wyo. Stat. § 35–11–112(a)(iii) (1997). Thus, the EQC is the appropriate body with subject matter jurisdiction over a review of the DEQ's interpretation of the law governing the permitting and operation of small mines.

### B. STATUTORY INTERPRETATION

■ At issue in this case is the interpretation of the statutory definition of "overburden" as applied to small mines. Wyo. Stat. § 35–11–103(e)(iv) provides:

> "Overburden" means all of the earth and other materials which lie above the mineral deposit and also means such earth and other material disturbed from their natural state in the process of mining, or mining from exposed natural deposits[.]

This definition must be interpreted in light of the Act as a whole. The Act designates three general categories for the permitting of mines, depending on the area and volume of affected land; the large mine, the small mine, and the exempt mine. The standard, or large, mine has no statutory limit on the amount of "overburden" which may be disturbed, but it is subject to the most extensive permitting requirements. *See* Wyo. Stat. § 35–11–406 (1997). On the other end of the spectrum is what is known as an "exempt" mine. An exempt mine is excused from most permitting requirements, but must produce specific minerals and have ten acres or less of affected land at any one time. Wyo. Stat. § 35–11–401(e)(vi).

In the middle is the "small" mine, created by Wyo. Stat. § 35–11–401(j). This provision states, in relevant part:

> The [EQC] * * * may modify or suspend certain requirements of W.S. 35–11–406(a), (b), (d), (f) and (g) by rules and regulations, for surface mining operations involving not more than ten thousand (10,000) yards of overburden and ten (10) acres of

affected land in any one (1) year, if the application requirements insure reclamation in accordance with the purposes of this act.

Wyo. Stat. § 35–11–401(j). Unlike an exempt mine, a small mine is not limited to ten acres of affected land at any one time, but may affect ten acres *each year*. This means that open or disturbed lands may expand every year, with reclamation required only when all recoverable materials have been exhausted from any mined area. For example, under the Henrie Pit permit in excess of thirty-three acres have been mined, but only three and one-half acres have been reclaimed.

Prior to the EQC's decision, the DEQ followed industry custom in distinguishing "topsoil" from "overburden." "Overburden," as used in the industry and applied by the DEQ, means material other than topsoil or material which is synonymous with "spoil." In contrast, "topsoil" is defined as "soil on the surface prior to mining that will support plant life[.]" Wyo. Stat. § 35–11–103(e)(xiv). This definition is pivotal in the regulatory scheme governing reclamation efforts in the mining process because topsoil must be separately preserved and managed. Thus, in accord with industry usage, the DEQ did not include "topsoil" when calculating the "overburden" restrictions in the annual operations of a small mine.

On appeal to the EQC, however, the EQC found that the plain language in the statutory definition of "overburden" clearly and unambiguously included topsoil, and therefore, Platte must include topsoil in the calculation of the amount of "overburden" disturbed each year at its mine. Platte argues that the language is not unambiguous because other provisions of the Act and DEQ regulations use the term "overburden" in the same context as it is used in the industry. Platte further argues that the ambiguity must be resolved in favor of the DEQ interpretation, because to include "topsoil" as part of "overburden" would undermine or hopelessly confuse the reclamation provisions of the Act.

" 'For some forty years, this court has espoused and followed, frequently, the rule that we do not resort to rules of statutory construction and interpretation when the language of a statute is plain and unambiguous.' " *Bergeron,* 948 P.2d at 1369 (*quoting City of Cheyenne v. Reiman Corp.,* 869 P.2d 125, 127–28 (Wyo.1994)); *Newton v. State ex rel. Wyoming Workers' Compensation Div.,* 922 P.2d 863, 865 (Wyo.1996). The statutory definition of "overburden" could not be more clear, and we are not persuaded that "all of the earth and other materials" does not mean exactly what it says. Wyo. Stat. § 35–11–103(e)(iv).

After careful review of the statutory provisions regarding "topsoil" and "overburden," we must agree with the EQC in its finding that, reading the Act as a whole, the inclusion of "topsoil" as a subset of "overburden" is merely effectuating the plain language of the statute. Contrary to Platte's predictions, this interpretation does not herald a breakdown in reclamation efforts in Wyoming. The statutory provisions regarding the handling of the specific substance, "topsoil," permit that substance to be distinguished from the more general term, "overburden," for the purposes of the reclamation provisions. Indeed, the Administrator of the DEQ Land Quality Division testified that any confusion over conflicting references in the DEQ's regulations can be resolved.

We also find that the EQC's interpretation advances the legislative intent to restrict small mines in both area and quantity of land affected. If these restrictions are economically unrealistic, as the DEQ maintains, then it is up to the legislature to address this concern and determine any appropriate alterations to the current statutory definition of "overburden."

## V. CONCLUSION

The EQC has subject matter jurisdiction to hear allegations of an unlawful policy in the administration of the Wyoming Environmental Quality Act, and correctly determined that the plain and unambiguous definition of "overburden" unquestionably includes topsoil. The order of the EQC is affirmed.