2012 WY 58

**Dennis POITRA, Jr., Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0085.**

Supreme Court of Wyoming.

April 12, 2012.

Representing Appellant: Elisabeth M.W. Trefonas, Assistant Public Defender, Jackson, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Senior Assistant Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] A jury convicted Dennis Poitra Jr., of felony murder, aggravated burglary, and conspiracy to commit burglary. Poitra and two other assailants were involved in the armed robbery of a residence in Sheridan that ended in the killing of 79–year–old Bob Ernst. Poitra presents four issues on appeal and for reasons set forth in this opinion, we affirm.

## ISSUES

[¶ 2] Poitra presents four issues for our consideration:

The trial court erred in denying Poitra's right to present the defense of involuntary intoxication, because involuntary intoxication does not require a "Not Guilty by Reason of Mental Illness" plea.

The trial court erred in refusing to instruct the jury on the defense of involuntary intoxication.

The trial court abused its discretion in denying Poitra's motion to change venue and violated his right to a trial by a fair and impartial jury.

Poitra's sentence to life imprisonment without the possibility of parole was arbitrary and capricious.

## FACTS

[¶ 3] On the night of August 25, 2009 Dennis Poitra Jr., and his friends, Dharminder Vir Sen and Wyatt Bear Cloud, entered the home of Bob and Linda Ernst. Poitra cut a window screen, crawled through the window, and unlocked the back door for his friends. The robbery ended in the killing of Bob Ernst.

[¶ 4] In the days before the burglary, Poitra and his two friends preliminarily planned to burglarize homes in Sheridan and amassed weapons and gear to do so. The gun that was used to kill Mr. Ernst was stolen from a pickup truck.

[¶ 5] After the three males entered the Ernsts' home, they initially scoured the basement for items to steal. Upon Sen's request, Poitra handed him the gun, and they went to the bedroom of the sleeping Ernsts where after a brief exchange between Sen and Bob Ernst, Sen fired the gun three times and killed Mr. Ernst. The three burglars retreated to Bear Cloud's home. The next day Poitra implicated himself to a friend, who then told police. Poitra was ultimately arrested, charged, and found guilty by a jury of felony murder, aggravated burglary, and conspiracy to commit burglary. The court sentenced him to life without parole and this appeal followed. Additional facts will be discussed as necessary throughout this opinion.

## DISCUSSION

[¶ 6] On appeal, Poitra presents several issues for our consideration. First, he claims that the trial court denied him his constitutional right to present a defense by restricting the use of certain evidence. Second, Poitra argues that he was not tried by an impartial jury due to pre-trial publicity and the impaneling of a biased juror. Finally, Poitra argues that because he did not actually shoot the victim and was cooperative with police post-arrest, it was "capricious" for the court to sentence him to the same sentence as the shooter.

[¶ 7] The State responds that Poitra's arguments are without merit. We agree with the State.

[¶ 8] We begin with Poitra's claim that the district court should have allowed him to present evidence of involuntary intoxication as part of his defense. Poitra's proposed defense was, essentially, that taking a prescribed dose of medication (in this case, Seroquel) resulted in his being "present" at the scene of a crime, but being a mere "shell" of a person. Specifically, Poitra sought to present evidence that the prescribed Seroquel resulted in a medical condition called akathisia. Poitra's trial counsel argued that the defense did not require a not guilty by reason of mental illness (NGMI) plea as well. Poitra had previously entered a plea of NGMI and had been evaluated by a Wyoming State Hospital doctor. He then withdrew the NGMI plea based upon the doctor's report which stated that, "although [Poitra] likely understood his conduct was illegal, his mental problems reduced his ability to fully

appreciate the wrongfulness of his alleged conduct[.]" Furthermore, the doctor said,

> It is also possible that [Poitra] was suffering from Seroquel-induced akithesia [sic] on the night in question ... [but] despite this possibility, it is my opinion that more likely than not, at the time of the alleged offenses, he did retain the capacity to conform his conduct to the requirements of the law, but chose not to.

Ultimately, the court ruled that Poitra could not present evidence on the defense of involuntary intoxication but that he could continue to present evidence of intoxication as it related to the specific intent element in the aggravated burglary portions of the charges.

[¶ 9] Poitra suggests that two standards of review are appropriate in our consideration of this issue: On the one hand, to the extent that failure to allow the presentation of evidence relevant to a defense raises a constitutional issue, Poitra argues that this Court should review the argument *de novo*. *See Holman v. State*, 2008 WY 54, 183 P.3d 368 (Wyo.2008). On the other hand, Poitra submits that on the issue as to whether the evidence was properly excluded, we should consider that under an abuse of discretion standard. *Smith v. State*, 2009 WY 2, ¶ 35, 199 P.3d 1052, 1063 (Wyo.2009).

[¶ 10] The district court based its procedural and evidentiary rulings on its conclusion that instances of temporary mental deficiency caused by involuntary intoxication fell within the reach of Wyo. Stat. Ann. § 7–11–304(a) so that if a defendant wished to introduce evidence of his mental incapacity due to involuntary intoxication and argue that he lacked mental responsibility due to involuntary intoxication, he first had to enter a plea under that statute. Poitra questions the district court's interpretation of the statute and, accordingly, we review that issue *de novo*. *See State v. Juarez*, 2011 WY 110, ¶ 5, 256 P.3d 517, 518 (Wyo.2011). The district court's exclusion of evidence of Poitra's involuntary intoxication insofar as he sought to use it to prove his defense is reviewed under an abuse of discretion. *Gruwell v. State*, 2011 WY 67, ¶ 12, 254 P.3d 223, 227 (Wyo. 2011).

[¶ 11] With the foregoing standards in mind, we turn to Poitra's argument and agree with him that this Court has previously suggested that involuntary intoxication is a valid defense against crimes in Wyoming even as early as 1902. *See Gustavenson v. State*, 10 Wyo. 300, 68 P. 1006 (1902). In *Gustavenson* this Court noted that "insanity is an excuse for the commission of every crime, because the party has not the possession of that reason, which includes responsibility," but that intoxication should be treated differently from insanity because Gustavenson's drunkenness was "produced by the voluntary act of the person and [thus] from consideration, of public policy, it is an exception to the rule that insanity is a sufficient defense." *Id.* at 1010. As of 1972, in *Rice v. State*, 500 P.2d 675 (Wyo. 1972) this Court showed no inclination to abandon its position that intoxication could form the basis of an insanity defense which, if proved to a jury's satisfaction, could completely excuse a defendant from responsibility for any crime unless the intoxication was voluntarily induced. "Where the intoxication was 'involuntary,' it may be a defense in the same circumstances as would insanity." 2 Wayne R. LaFave, *Substantive Criminal Law*, § 9.5 (2d ed. 2003). Historically, the law has been comfortable with finding that involuntary intoxication may justify an insanity defense, and many jurisdictions have expressly codified this recognized relationship. *See* 2 Paul H. Robinson, *Criminal Law Defense* § 176(c) (2011) (involuntary intoxication was recognized as a defense where it caused temporary insanity); Ala.Code § 13A–3–2(c); Tenn.Code Ann. § 39–11–503(c); Del.Code Ann., Title 11, § 423.

[¶ 12] Unlike the aforementioned codes, Wyo. Stat. Ann. § 7–11–304(a) (LexisNexis 2011) by its terms implicitly includes the defense of involuntary intoxication. However, the statute is not quite as explicit in codifying this Court's demonstrated adherence to the common law tradition. The substance of the statute reads as follows:

> A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity ei-

ther to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. § 6–1–202(b).

Wyo. Stat. Ann. § 6–1–202(b) (LexisNexis 2011) provides:

> Intoxication is self-induced if it is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly and voluntarily introduced or allowed to be introduced into his body unless they were introduced pursuant to medical advice.

[¶ 13] In looking at this statute more in depth we construe it as a whole giving effect to every word, clause, and sentence. "The fundamental rule we invoke in the interpretation of a statute is that we must ascertain, if possible, what the legislature intended by the language it used." *Juarez*, ¶ 5, 256 P.3d at 518 (citing *McCreary v. Weast*, 971 P.2d 974, 979 (Wyo.1999)).

> Our review of statutory interpretation begins with an inquiry into the ordinary and obvious meaning of the words employed by the legislature according to the manner in which those words are arranged. *Id.; Sheridan Commercial Park, Inc. v. Briggs*, 848 P.2d 811, 815 (Wyo.1993). If more than one reasonable interpretation exists, we resort to general principles of statutory construction. *Moncrief v. Wyoming State Bd. of Equalization*, 856 P.2d 440, 444 (Wyo.1993) (*quoting Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n*, 845 P.2d 1040, 1044 (Wyo.1993)). When the legislature has spoken in unambiguous terms, however, "we are bound to the results so expressed." *State ex rel. Wyoming Workers' Compensation Div. v. Bergeron*, 948 P.2d 1367, 1369 (Wyo.1997).

*Id.* (citing *Platte Dev. Co. v. Environmental Quality Council*, 966 P.2d 972, 974 (Wyo. 1998)).

[¶ 14] When reviewing the statute in the manner suggested above, it is clear to this Court that the legislature does not limit the defense to cases of naturally occurring mental conditions, but instead limits the application of the defense to "severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6–1–202(b)." § 7–11–304(a). It is not the *source* of the mental condition, but the *severity*—thus, intoxication is not excluded by the language of the statute. The statute in question may not expressly say that it covers *any* severely abnormal condition, but the plain language implies that intoxication may be a covered "severely abnormal condition," so long as it is involuntary. Giving effect to the plain language of § 7–11–304(a), involuntary intoxication is a statutory defense to a criminal charge in Wyoming.

[¶ 15] Poitra sought to avoid the standards of § 7–11–304(a) when he withdrew his NGMI plea but yet urged to the court to recognize a "lack of mental responsibility" defense that did not require him to prove that his Seroquel intoxication was a "severely abnormal mental condition that grossly and demonstrably" impaired his "perception or understanding of reality." Rather, under his proposed defense, he would be relieved of showing any severe mental condition and would only have to show the involuntary intoxication and the inability to conform his conduct to the requirements of the law. The district court was not persuaded and admonished Poitra, "... you don't get this kind of halfhearted diminished capacity type of defense."

[¶ 16] We uphold the district court's decision to not accept Poitra's argument. Poitra had withdrawn his NGMI plea and was therefore legitimately prohibited from introducing evidence of his involuntary intoxication for the purposes of proving that he lacked the mental capacity to commit the crimes in question.

[¶ 17] Similarly, we agree with the district court's decision to refuse to instruct the jury on Poitra's proposed defense of involun-

tary intoxication. His proposed instructions stated in part:

> [I]nvoluntary intoxication is a complete defense to the offenses charged in the felony information in this case. The defense of involuntary intoxication involves proof of two facts:
>
> 1. At the time of the alleged offenses in this case, the defendant was involuntarily intoxicated, and
>
> 2. Due to this intoxication, the defendant was incapable of conforming his conduct to the requirements of the law.

Because Poitra's proposed defense was invalid absent the entry of a proper plea, we do not find error in the district court's denial of his proposed instruction. *See Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo.1992) ("the offered instruction must present a defense recognized by statute or case law in this jurisdiction").

**Change of Venue**

[¶ 18] Poitra's second argument on appeal is that the trial court improperly denied his motion for a change of venue and thereby violated his right to trial by a fair and impartial jury. We review the denial of a motion for change of venue for an abuse of discretion. *Proffit v. State*, 2008 WY 102, ¶ 29, 191 P.3d 963, 972–73 (Wyo.2008). This Court will not interfere with the trial court's decision unless the trial court acted in a manner exceeding the bounds of reason under the circumstances. *Id.*

[¶ 19] A criminal defendant is entitled "to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Wyo. Const. art. 1, § 10. Similarly, Wyo. Stat. Ann. § 1–7–102(a) (LexisNexis 2011) states that "[e]very criminal case shall be tried in the county in which the indictment or offense charged is found, except as otherwise provided by law." W.R.Cr.P. 18 echoes that law and states, "except as otherwise permitted by statute or these rules, the prosecution shall take place in the county in which the offense is alleged to have been committed[.]" However, there is a procedure for a change of venue when local prejudice prevents a defendant from receiving a fair trial. W.R.Cr.P. 21(a) states:

> (a) *Prejudice within county.*—Upon timely motion of the defendant, the court shall transfer the proceeding as to that defendant to another county, but only if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in that county.

[¶ 20] This Court has adopted a two-part test to determine if a change of venue should be granted on the basis of pretrial publicity. *Smith v. State*, 2009 WY 2, ¶ 66, 199 P.3d 1052, 1070 (Wyo.2009). First, we consider the nature and extent of the publicity. Secondly, we analyze the difficulty or ease encountered by the district court in selecting a jury " 'along with the amount of prejudice which actually appears during *voir dire* examination.' " *Id.* (citations omitted). The defendant usually has the responsibility of proving actual prejudice in order to obtain a change of venue. *Id.* We will only invoke a presumption of prejudice in extreme cases where the pre-trial publicity is "so inflammatory as practically to dictate the community's opinion." *Carothers v. State*, 2008 WY 58, ¶ 11, 185 P.3d 1, 8–9 (Wyo.2008).

[¶ 21] Poitra moved for a change of venue about two months prior to trial and, in doing so, faced the burden of convincing the court that it should presume a community-wide bias based solely on the nature of the pre-trial publicity the case received. *Sanchez v. State*, 2006 WY 116, ¶ 13, 142 P.3d 1134, 1139 ("In rare cases, the community is so predisposed that prejudice can be presumed and venue must be transferred as a matter of law. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963)"). Indeed, presumed prejudice is rarely invoked and only in extreme circumstances. *Id.* Specifically in regard to high-profile cases with significant publicity, we have said the following:

> It is to be expected that most of the jury panel will have heard about a sensational case, but there is no requirement that a

juror be ignorant of the facts and issues involved in a case. *Wilcox v. State,* [670 P.2d 1116, 1119 (Wyo.1983) ]. The totality of the circumstances must indicate the presence of improper prejudice. *Weddle v. State,* 621 P.2d 231 (Wyo.1980). The question focuses on whether a fair jury was ultimately selected. *Shaffer v. State,* [640 P.2d 88, 103 (Wyo.1982) ].

*Proffit,* ¶ 29, 191 P.3d at 972–973 (quoting *Murry v. State,* 713 P.2d 202, 208 (Wyo. 1986)). The benchmark is whether the "totality of the circumstances" indicates "the presence of improper prejudice." *Id.*

[¶ 22] Applying our two-part test for motions for a change of venue, we first consider the nature and extent of the publicity. Here, we agree that there was substantial publicity surrounding the case. The evidence of publicity included 20 newspaper articles and opinion letters relating to the case or the victim, 17 internet-based articles from Sheridanmedia.com, the Sheridanmedia.com poll asking whether Poitra and his co-defendants could receive a fair trial in Sheridan, and 77 printed pages of blogs from the internet. Poitra argues that the Sheridanmedia.com poll and the individual blogs provided direct evidence of the bias that was held by the Sheridan community. Indeed, the trial judge in noting that he had reviewed all of the submitted materials expressed his awareness of the problems they could create. Yet, the court noted that the comments to the newspaper articles and blogs carried "little weight" because they were posted anonymously, and there was no indication as to how broadly read they were. As to the newspaper articles themselves, the court reasonably noted that they were "primarily factual in nature and not the type that would create, at least at this point [in] time, sufficient concern for the Court." Generally, fact-based publicity will not support a finding of highly prejudicial bias. *Urbigkit v. State,* 2003 WY 57, ¶ 27–28, 67 P.3d 1207, 1220 (Wyo.2003).

[¶ 23] The second part of the test directs us to analyze the relative difficulty or ease encountered by the district court in selecting a jury, taking into account the amount of prejudice which actually appeared during voir dire examination. Here, *voir dire* unveiled no new or significant evidence of community bias. Initially, the district court pooled 48 potential jurors, of which fifteen indicated they had formed an opinion about the case based upon pre-trial publicity. Of those fifteen, twelve expressed concern about their ability to be fair and impartial. Nine of those twelve indicated they could not set aside their opinions, and those nine were excused for cause. The parties conferred in chambers after defense counsel questioned the potential jurors, and defense counsel expressed his belief that an adequate jury could be selected from the first 48 potential jurors, or the next 50. A jury was eventually selected from the first pool, seemingly with relative ease. Although one juror was empaneled even though he was unsuccessfully challenged for cause, the district court did not abuse its discretion when it decided to empanel that particular juror. After our review of the record, it is clear that the trial court properly exercised its discretion in a reasonable manner considering all aspects of the juror's "honestly expressed feelings" in deciding to allow him to serve on the jury.

[¶ 24] We cannot find after reviewing the facts that the trial court acted in a manner exceeding the bounds of reason under the circumstances of this case. The district court's decision to deny Poitra's motion for a change of venue is affirmed.

## Sentencing

[¶ 25] In his final issue Poitra argues that the court's sentence of life in prison without parole was arbitrary and capricious. We review sentencing for an abuse of discretion. *Hackett v. State,* 2010 WY 90, ¶ 6, 233 P.3d 988, 990 (Wyo.2010).

[¶ 26] Generally, Poitra argues that the mitigating factors he presented at his sentencing hearing should have garnered more favor with the court. Also, Poitra compares his sentence to his co-defendant's and claims that because he was not the shooter, his culpability is less and his sentence should reflect that detail.

[¶ 27] This Court has reviewed similar claims on appeal before. *See Harlow v.*

*State,* 2003 WY 47, ¶ 81, 70 P.3d 179, 204–205 (Wyo.2003) ("accomplices in crime need not be sentenced alike; a sentence should be patterned to the individual defendant"); *Burk v. State,* 848 P.2d 225, 236 (Wyo.1993) ("we let each case stand on its own peculiar facts"); *Duffy v. State,* 837 P.2d 1047, 1053 (Wyo.1992) ("we do not find that discretion to be abused simply because sentences of different lengths are given to one or more co-defendants"). We essentially state the same thing in this case—a specific case should reflect the specific defendant.

 [¶ 28] After reviewing the record, we believe the court appropriately focused on Poitra specifically. At sentencing, Poitra's record spoke for itself. From the time he was 11 years old, Poitra struggled with controlling his anger and holding himself within the confines of the law. His troubles included trying to stab his school principal, using controlled substances, property destruction, stealing vehicles, resisting arrests, and assault. After failed rehabilitation efforts by the State, Poitra continued to break the law. Nevertheless the district court noted the mitigating factors that Poitra presented at sentencing: His unstable and unhealthy childhood, a history of physical abuse, his level of cognitive development, depression, his actual role in the crimes committed in this case, his willingness to admit to the crimes, and his cooperation against his co-defendant.

[¶ 29] Even when taking into consideration the above-mentioned mitigating factors, the district court could not ignore that Poitra was actively involved in planning the burglary, that he actually broke into the home and opened doors for his co-defendants, that he stood idly by when the victim was shot, and that he went to breakfast the next morning using money stolen from the victim. Before announcing its sentence, the district court stated that it had "given [Poitra's sentencing] a great deal of thought and consideration, deliberation, and factored in the aggravate[ing] circumstances, as well as the mitigating circumstances[.]"

[¶ 30] We affirm the sentencing decision by the district court and find no abuse of discretion in this instance.

## CONCLUSION

[¶ 31] The trial court did not deny Poitra his constitutional right to present a defense by restricting the use of certain evidence. We affirm the district court's denial of Poitra's motion for a change of venue, and we disagree that the court impaneled a biased juror. Finally, the district court did not abuse its discretion at sentencing. The conviction and sentence in this case is affirmed.