# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 113

APRIL TERM, A.D. 2014

September 10, 2014

WYATT L. BEAR CLOUD,

Appellant
(Defendant),

v.

S-13-0216

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

***Representing Appellant:***
Deborah L. Roden, Woodhouse Roden Nethercott, LLC, Cheyenne, Wyoming.

***Representing Appellee:***
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Meri V. Geringer, Senior Assistant Attorney General. Argument by Ms. Geringer.

*Before BURKE, C.J., and HILL, KITE,\* DAVIS, and FOX, JJ.*

*\*Chief Justice at time of oral argument.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Wyatt Bear Cloud was 16 years old when he participated in several crimes that culminated in the murder of Robert Ernst.  Mr. Bear Cloud entered a guilty plea to charges of first-degree murder, aggravated burglary, and conspiracy to commit aggravated burglary.  In his third appeal to the Wyoming Supreme Court, Mr. Bear Cloud raises a number of issues regarding the sentence imposed on him for crimes he committed as a juvenile.  We reverse and remand to the district court with instructions to resentence on all counts.

## ISSUES

[¶2]    We address the following issues:

1.   Is the aggregate consecutive sentence a *de facto* life without parole sentence imposed without compliance with the Eighth Amendment of the United States Constitution and *Miller v. Alabama*?

2.   Does Wyoming's mandatory identical sentencing structure for accessory and principal actors in felony murder – which imposes a mandatory life sentence – violate the Eighth Amendment of the United States Constitution when applied to juveniles?

3.   Is the district court's sentence of 20-25 years for aggravated burglary unconstitutional as grossly disproportionate?

## FACTS

[¶3]    When he was 16 years old, Mr. Bear Cloud stole a gun, and later broke into a home along with two other young men, Dennis Poitra and Dharminder Vir Sen.  During the course of the burglary, while Mr. Bear Cloud was in another room, Mr. Sen shot and killed one of the home's residents with the stolen gun.  The facts are more thoroughly set forth in *Bear Cloud v. State*, 2012 WY 16, 275 P.3d 377 (Wyo. 2012) (*Bear Cloud I*), and *Bear Cloud v. State*, 2013 WY 18, 294 P.3d 36 (Wyo. 2013) (*Bear Cloud II*), and will not be repeated here.

[¶4]    Mr. Bear Cloud was convicted on his guilty plea of Murder in the First Degree (Felony-Murder), in violation of Wyo. Stat. Ann. § 6-2-101(a) (LexisNexis 2011); Conspiracy to Commit Aggravated Burglary, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-3-301(a) and (c)(i) (LexisNexis 2011); and Aggravated Burglary, in violation of Wyo. Stat. Ann. § 6-3-301(a) and (c)(i) (LexisNexis 2011).  *Bear Cloud I*, 2012 WY 16, ¶ 1, 275 P.3d at 382.  The district court sentenced him to 20-25 years in prison for Aggravated Burglary; life in prison "according to law" for first-degree murder, to be served consecutively to the aggravated burglary sentence; and 20-25 years in prison

1

for conspiracy to commit aggravated burglary, to be served concurrently with the first-degree murder sentence. *Id*. at ¶ 15, at 384.

[¶5]   Mr. Bear Cloud appealed to this Court, which affirmed. *Bear Cloud I*, 2012 WY 16, ¶ 2, 275 P.3d at 383.  He then filed his petition for writ of certiorari in the United States Supreme Court, which issued its decision in *Miller v. Alabama*, 567 U.S. ---, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), on June 25, 2012, holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at ---, 132 S.Ct. at 2469.  On October 1, 2012, the United States Supreme Court issued its opinion in *Bear Cloud v. Wyoming*, 133 S.Ct. 183, 183-84, 184 L.Ed.2d 5 (2012), stating: "Judgment vacated, and case remanded to the Supreme Court of Wyoming for further consideration in light of *Miller v. Alabama*, 567 U.S. ---, [132 S.Ct. 2455] (2012)."

[¶6]   On remand, even though the United States Supreme Court had vacated the judgment without restriction, this Court held that "[o]nly the life sentence for first-degree murder is at issue in this appeal." *Bear Cloud II*, 2013 WY 18, ¶ 9, 294 P.3d at 40.  We held that, under Wyoming law, Mr. Bear Cloud's sentence of "life according to law" is in effect a life sentence without possibility of parole, and that such a sentence violates the Eighth Amendment when it is imposed on a juvenile without the benefit of an individualized sentencing hearing. *Id.* at ¶¶ 34, 42, 294 P.3d at 45, 47.  The purpose of the individualized sentencing hearing for juveniles is to consider factors going to their "'lessened culpability' and greater 'capacity for change.'" *Id.* at ¶ 41, at 46 (quoting *Miller*, 567 U.S. at ---, 132 S.Ct. at 2460).  We outlined those *Miller* factors and remanded the case to the district court for a new hearing on Mr. Bear Cloud's sentence for his first-degree murder conviction. *Id.* at ¶¶ 42, 49, at 47, 48.

[¶7]   The 2013 Wyoming legislature amended the laws governing juvenile parole eligibility, specifically stating persons convicted of first-degree murder who were under 18 at the time of the offense "shall be punished by life imprisonment," and that they shall be eligible for parole after having served 25 years of incarceration.  2013 Wyo. Sess. Laws, ch. 18, § 1 (amending Wyo. Stat. Ann. §§ 6-2-101(b) and 6-10-301(c)).[1]

---

[1] Wyo. Stat. Ann. § 6-10-301(c) was modified as follows:

> (c) Any sentence other than a sentence specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor.  A person sentenced to life imprisonment for an offense committed after the person reached the age of eighteen (18) years is not eligible for parole unless the governor has commuted the person's sentence to a term of years.  A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts

[¶8]  Meanwhile, Mr. Bear Cloud's co-defendant, Mr. Sen, who was 15 years of age at the time of the offenses, appealed his life without parole sentence as unconstitutional under *Miller v. Alabama*.  This Court agreed, holding:

> [W]e vacate Sen's sentence of life without the possibility of parole.  Further, because Sen's sentence of life without the possibility of parole may have impacted the sentencing decisions with respect to his conspiracy and aggravated burglary convictions, we vacate those sentences and remand for sentencing on all counts.

*Sen v. State*, 2013 WY 47, ¶ 1, 301 P.3d 106, 110  (Wyo. 2013).

[¶9]  On August 28, 2013, the district court held a day-long sentencing hearing, at which it heard testimony and took evidence relating to adolescent brain development in general, and Mr. Bear Cloud's environment, conduct, and mental development in particular.  The district court carefully applied the *Miller* factors to the facts presented at the sentencing hearing.  The district court noted that, "there are two or three sides to every coin when we apply the facts to those factors," and added "while it is easy for the appellate courts to list these factors and make a cookie cutter approach to this, it's never as easy to apply them to the actual facts of this case."  It nevertheless proceeded to do so, and it set forth its analysis of the *Miller* factors in its Corrected Judgment and Sentence.

[¶10]  The district court also stated that *Bear Cloud II* "made clear that the sentences in Counts II [Conspiracy to Commit Aggravated Burglary] and III [Aggravated Burglary] were not before the Court but to the extent some may believe the Court was authorized to reconsider those sentences, the Court would have re-affirmed those sentences in any event."

[¶11]  The district court sentenced Mr. Bear Cloud to life in prison with the possibility of parole after serving for 25 years on the felony murder charge,[2] to run consecutive to the previously imposed sentence for Count III of 20 to 25 years, and concurrent to the

---

> specified in W.S. 7-13-402(b) after having reached the age of eighteen (18) years the person shall not be eligible for parole.

2013 Wyo. Sess. Laws, ch. 18, § 1 at 76.

[2] Although this sentence mirrors the sentence prescribed by the legislature in the 2013 statutory amendments, the district court found the amended statute did not control Mr. Bear Cloud's sentence, stating:  "I am faced with . . . a strong persuasive policy decision by the legislature that is not mandatory on the Court at this time, in this case, but it is a beginning point and perhaps an ending point for the Court[.]"

sentence for Count II. The parties stated at oral argument that the effect of this sentencing structure is that the earliest possible meaningful opportunity for Mr. Bear Cloud's release would be in just over 45 years, or when he is 61.[3]

[¶12] Mr. Bear Cloud timely filed his appeal.

## DISCUSSION

### I. Is the aggregate consecutive sentence a de facto life without parole sentence imposed without compliance with the Eighth Amendment of the United States Constitution and Miller v. Alabama?

[¶13] "Issues of constitutionality present questions of law. We review questions of law under a *de novo* standard of review and afford no deference to the district court's determinations on the issues." *Bear Cloud II*, 2013 WY 18, ¶ 13, 294 P.3d at 40 (citing *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo. 1996)).

[¶14] We analyze this issue under the United States Constitution and not the Wyoming Constitution because Mr. Bear Cloud makes no more than a passing reference to the protections that might be afforded by our state constitution.[4] We agree that our state constitution need not necessarily be analyzed by "blindly follow[ing] the United States Supreme Court's interpretation[.]" *Saldana v. State*, 846 P.2d 604, 621 (Wyo. 1993) (Macy, J., specially concurring). However, "it is not the function of this court to frame appellant's argument or draw his issues for him." *Id.* at 622 (Golden, J., concurring) (quoting *Hance v. Straatsma*, 721 P.2d 575, 577 (Wyo. 1986)). We adopt Justice Golden's advice in his *Saldana* concurrence:

---

[3] With "good time" credit, Mr. Bear Cloud might be eligible for release after 35 years, or at age 51. The United States Supreme Court has held that:

> An award of good time credit by the Bureau of Prisons (BOP) does not affect the length of a court-imposed sentence; rather, it is an administrative reward "to provide an incentive for prisoners to 'compl[y] with institutional disciplinary regulations.'" Such credits may be revoked at any time before the date of a prisoner's release.

*Pepper v. United States*, --- U.S. ---, ---, 131 S.Ct. 1229, 1248, n.14, 179 L.Ed.2d 196 (2011) (quoting *Barber v. Thomas*, 560 U.S. 474, 482, 130 S.Ct. 2499, 2505 (2010)). We therefore do not rely on the "good time" potential for our analysis.

[4] Mr. Bear Cloud's entire argument relating to the Wyoming Constitution consisted of: "Wyoming's State Constitution can provide greater protections that [sic] the federal constitution and Wyoming does so by analyzing the two words cruel and unusual separately. *Johnson v. State*, 2003 WY 9, ¶ 35, 61 P.3d 1234, [1249] (Wyo. 2003); *Sampsell v. State*, 2001 WY 12, ¶¶ 10-11, 17 P.3d 724, [727-28] (Wyo. 2001)."

4

Litigants would do well to remember:

> Recourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens must spring not from pure intuition, but from a process that is at once articulable, reasonable and reasoned.

*Saldana*, 846 P.2d at 622 (Golden, J., concurring) (quoting *State v. Gunwall*, 720 P.2d 808, 813 (Wash. 1986)). Without such an articulable, reasonable and reasoned argument, we will not consider a state constitutional analysis. *See also Nava v. State*, 2010 WY 46, ¶ 8, 228 P.3d 1311, 1313-14 (Wyo. 2010); *Mogard v. City of Laramie*, 2001 WY 88, ¶ 6, 32 P.3d 313, 315 (Wyo. 2001); *Vasquez v. State*, 990 P.2d 476, 484 (Wyo. 1999) ("[A] litigant must provide a precise, analytically sound approach when advancing an argument to independently interpret the state constitution."). We therefore rely for our analysis on the United States Constitution.

[¶15] In a series of cases culminating in *Miller v. Alabama*, the United States Supreme Court has established "that children are constitutionally different from adults for purposes of sentencing [b]ecause juveniles have diminished culpability and greater prospects for reform." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2464. In 1982, explaining the importance of considering the mitigating factors of youth in sentencing, the United States Supreme Court quoted a passage from a 1978 report of the *Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders*:

> [A]dolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth.

*Eddings v. Oklahoma*, 455 U.S. 104, 116, n.11, 102 S.Ct. 869, 877, n.11 (1982) (internal citation and quotation marks omitted).

[¶16] In 1988, in *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L. Ed.2d 702 (1988), a plurality of the Court set aside the death sentence imposed on a 15-year-old offender, holding that such a sentence would violate the Eighth Amendment of the United States Constitution, which provides: "Excessive bail shall not be required, nor excessive

fines imposed, nor cruel and unusual punishments inflicted." *Id.* at 819, 108 S.Ct. at 2690.[5] The *Thompson* plurality noted that the drafters of the constitution "made no attempt to define the contours" of cruel and unusual punishment, so over the years the Court has "been guided by the 'evolving standards of decency that mark the progress of a maturing society.'" *Id.* at 821, 108 S.Ct. at 2691 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598 (1958) (plurality opinion)). The *Thompson* Court concluded "that it would offend civilized standards of decency to execute a person who was less than 16 years old at the time of his or her offense[.]" *Id.* at 830, 108 S.Ct. at 2696. It explained the conclusion "that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult," *Id*. at 835, 108 S.Ct. at 2698, saying:

> Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult.

*Id.* at 835, 108 S.Ct. at 2699 (footnote omitted).

[¶17]  The next year, in *Stanford v. Kentucky*, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), a majority of the Court held that the Eighth and Fourteenth Amendments did not proscribe the death penalty for offenders over 15 but under 18. *Id.* at 370-71, 109 S.Ct. at 2975-76. That position was reversed sixteen years later in *Roper v. Simmons*, 543 U.S. 551, 574, 125 S.Ct. 1183, 1198 (2005), when the Court held that the age of 18, "the point where society draws the line for many purposes between childhood and adulthood," is "the age at which the line for death eligibility ought to rest."

[¶18] The *Roper* Court thoroughly discussed the bases for its conclusion that "our society views juveniles . . . as 'categorically less culpable than the average criminal.'" *Id.* at 567, 125 S.Ct. at 1194 (quoting *Atkins v. Virginia*, 536 U.S. 304, 316, 122 S.Ct. 2242, 2249 (2002) (categorically prohibiting death penalty for mentally retarded offenders because mental retardation diminishes culpability)).

[¶19] The Court identified three general differences between juveniles under 18 and adults:

---

[5] The Eighth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Graham*, 560 U.S. at 53, 130 S.Ct. at 2018.

6

> First, as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm, "a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." . . . .
>
> [Second,] . . . [y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage[.] This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. See Steinberg & Scott, Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003) (hereinafter Steinberg & Scott) ("[A]s legal minors, [juveniles] lack the freedom that adults have to extricate themselves from a criminogenic setting").
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed. See generally E. Erikson, Identity: Youth and Crisis (1968).

*Id.* at 569-70, 125 S.Ct. at 1195 (some citations and quotations marks omitted). The Court's different treatment of juvenile offenders rests on its conviction that: "[t]he reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id.* at 570, 125 S.Ct. at 1195. As a result, juveniles who engage in risky or illegal behavior may not only be considered to be less culpable, they can also be expected to leave the "impetuousness and recklessness" of youth behind as they mature. *Id.* at 570, 125 S.Ct. at 1196 (quoting *Johnson v. Texas,* 509 U.S. 350, 368, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993)).

[¶20] The *Roper* Court reasoned that juveniles not only have diminished culpability and greater prospects for rehabilitation, but also that the penological justifications for the death penalty apply with lesser force to juveniles. "Retribution is not proportional if the law's most severe penalty is imposed on one whose culpability or blameworthiness is diminished, to a substantial degree, by reason of youth and immaturity." *Id.* at 571, 125 S.Ct. at 1196. The deterrent effect of the death penalty likewise carries less weight in the case of juveniles because "'[t]he likelihood that the teenage offender has made the kind

of cost-benefit analysis that attaches any weight to the possibility of execution is so remote as to be virtually nonexistent.'" *Id.* at 572, 125 S.Ct. at 1196 (quoting *Thompson*, 487 U.S. at 837, 108 S.Ct. at 2700).

[¶21] The United States Supreme Court next applied its rationale on a juvenile's diminished culpability and greater prospects for rehabilitation to life without parole sentences for juvenile non-homicide offenders in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The Court held that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *Id.* at 69, 130 S.Ct. at 2027. The *Graham* Court recognized that the Eighth Amendment does not require that all juvenile non-homicide offenders be guaranteed eventual freedom. What it does require is that juvenile offenders have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75, 130 S.Ct. at 2030. While recognizing that some juveniles who commit truly horrifying crimes "may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives," the Court held that the Eighth Amendment "forbid[s] States from making the judgment at the outset that those offenders will never be fit to reenter society." *Id.* The *Graham* Court adopted a categorical rule against life without parole for juvenile non-homicide offenders, rather than a case-by-case determination, because it was not confident that "courts taking a case-by-case proportionality approach could with sufficient accuracy distinguish the few incorrigible juvenile offenders from the many that have the capacity for change." *Id.* at 77, 130 S.Ct. at 2032.

[¶22] Most recently, the United States Supreme Court extended the requirement of a meaningful opportunity for release to juvenile homicide offenders in *Miller v. Alabama*, explaining that the reasoning in *Graham* "implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2465.

[¶23] In *Miller*, the United States Supreme Court reviewed the sentences of two 14-year-old offenders who had been convicted of murder and sentenced to life in prison without possibility of parole. Kuntrell Jackson and two other boys decided to rob a video store. On the way there, Jackson learned that another boy had a sawed-off shotgun. Jackson waited outside, then went into the store. The store clerk threatened to call the police, and Jackson's co-defendant shot her. Jackson was charged as an adult and convicted by a jury of felony murder and aggravated robbery. The judge, in accordance with Arkansas' mandatory sentencing laws, sentenced Jackson to life without parole. *Id.* at ---, 132 S.Ct. at 2461.

[¶24] Evan Miller's crime was even more horrifying. After a neighbor, Cole Cannon, came to his house to make a drug deal with Miller's mother, Miller and a friend followed Cannon to his trailer to smoke marijuana and play drinking games with him. When

Cannon passed out, Miller stole his wallet. A struggle ensued, and Miller repeatedly hit Cannon with a baseball bat. "Miller placed a sheet over Cannon's head, told him, 'I am God, I've come to take your life,' and delivered one more blow." *Id.* at ---, 132 S.Ct. at 2462. The two boys left, but soon returned and set fires to cover up evidence of their crime. Cannon died of the injuries and smoke inhalation. Miller was found guilty of murder in the course of arson, and was sentenced to life in prison without parole, the mandatory minimum punishment for that crime in Alabama. *Id.* at ---, 132 S.Ct. at 2462-63. The United States Supreme Court reversed both judgments. *Id.* at ---, 132 S.Ct. at 2475.

[¶25] The *Miller* Court began its analysis with a review of Eighth Amendment jurisprudence, saying that "[t]he Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Id*. at ---, 132 S.Ct. at 2463 (quoting *Roper*, 543 U.S. at 560, 125 S.Ct. at 1190). An "excessive sanction" is determined by applying the concept of proportionality – "'punishment for crime should be graduated and proportioned' to both the offender and the offense." *Id.* at ---, 132 S.Ct. at 2463 (quoting *Roper*, 543 U.S. at 560, 125 S.Ct. at 1183). "Proportionality" is a concept that also evolves, with "'the evolving standards of decency that mark the progress of a maturing society.'" *Miller*, 567 U.S. at ---, 132 S.Ct. at 2463 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)).

[¶26] The Court went on to review the "two strands of precedent reflecting our concerns with proportionate punishment," and concluded that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2463-64. The Court noted that "'our history is replete with laws and judicial recognition' that children cannot be viewed as simply miniature adults." *Id.* at ---, 132 S.Ct. at 2470 (quoting *J.D.B. v. North Carolina*, 564 U.S. ---, ---, 131 S.Ct. 2394, 2404, 180 L.Ed.2d 310 (2011)),[6] and reasoned that "none of what [*Graham*] said about

---

[6] Likewise, our Wyoming legislature has given broad recognition to minors' limited capacities. *See, e.g.*, Wyo. Stat. Ann. § 12-6-101 (LexisNexis 2013) (possession and sale of alcohol to persons under age 21 prohibited); Wyo. Stat. Ann. §§ 14-3-302, 305 (LexisNexis 2013) (possession and sale of tobacco to minors prohibited); Wyo. Stat. Ann. § 14-3-107 (LexisNexis 2013) (tattoos, piercings and body art prohibited for under age 18 without parental consent); *Novosel v. Sun Life Assur. Co. of Canada*, 49 Wyo. 422, 55 P.2d 302, 305-06 (Wyo. 1936) (contracts by minors voidable); Wyo. Stat. Ann. § 20-1-102 (LexisNexis 2013) (marriage prohibited under age 18 without parental consent); Wyo. Stat. Ann. § 22-3-102(a)(ii) (LexisNexis 2013) (right to vote at age 18); Wyo. Stat. Ann. § 1-11-101 (LexisNexis 2013) (must be "adult" for jury service); Wyo. Stat. Ann. § 35-6-118 (LexisNexis 2013) (must have parental consent for an abortion under age 18, unless one of the exceptions is met); Wyo. Stat. Ann. §§ 14-1-202, 203 (LexisNexis 2013) (emancipation permitted at age 17 with parental consent); Wyo. Stat. Ann. § 14-1-202(a)(iii) (LexisNexis 2013) (parents responsible for torts of minors unless emancipated); Wyo. Stat. Ann. § 41-13-219 (LexisNexis 2013) (must be 16 to operate a boat, or be accompanied by an adult); Wyo. Const. art. 7, § 9 (compulsory education for minors); Wyo. Stat. Ann. § 23-2-202 (LexisNexis 2013) (must be 14 to obtain a fishing license); Wyo. Stat. Ann. § 23-2-102 (LexisNexis 2013) (must be 12 to

9

children—about their distinctive (and transitory) mental traits and environmental vulnerabilities—is crime-specific." *Id.* at---, 132 S.Ct. at 2465.

[¶27] Unlike *Graham*, which adopted a categorical bar against life-without-parole for juvenile non-homicide offenders, *Miller* requires "only that a sentence follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Id.* at ---, 132 S.Ct. at 2471. The process to be followed is an individualized sentencing hearing that takes into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at ---, 132 S.Ct. at 2469. The Court held that "the mandatory penalty schemes [sentencing Miller and Jackson to life without parole] prevent the sentencer from taking account of these central considerations." *Id.* at ---, 132 S.Ct. at 2466.

[¶28] In addition to considering the juvenile's age and its "hallmark features," the Court explained that, in the case of Kuntrell Jackson, the fact he was a non-shooter and only learned on the way to the video store that his friend was carrying a gun, should be considered "before depriving a 14-year-old of any prospect of release from prison." *Id.* at ---, 132 S.Ct. at 2468-69 ("[W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability.") (quoting *Graham*, 560 U.S. at 69, 130 S.Ct. at 2027).

[¶29] The United States Supreme Court has not, however, decided whether its rationale in the line of cases summarized above applies to cases such as this, where aggregate sentences result in what is for practical purposes a lifetime in prison.

[¶30] We begin by acknowledging that the guidance we provided in *Bear Cloud II* was incorrect in one critical respect: we remanded to the district court for resentencing only on the first-degree murder conviction, rather than on all counts. This was inconsistent with our holding in *Sen*, 2013 WY 47, ¶ 1, 301 P.3d at 110 (remanding for resentencing on all counts), and not in accord with United States Supreme Court law. In *Pepper v. United States*, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011), the United States Supreme Court rejected an argument that the law of the case should require the sentencing court on remand to maintain a portion of the sentence which had not been challenged on appeal.

> As the Government explains, however, the Court of
> Appeals in *Pepper III* set aside Pepper's entire sentence and
> remanded for a *de novo* resentencing. See 518 F.3d, at 949,

---

obtain a hunting license if hunting with an adult, 14 if not); Wyo. Stat. Ann. § 9-17-118 (LexisNexis 2013) (prohibiting minors from buying lottery tickets); Wyo. Stat. Ann. § 31-7-112 (LexisNexis 2013) (must have parental consent to obtain a driver's license if under 18); Wyo. Stat. Ann. § 14-3-108 (LexisNexis 2013) (must be 15 to use a tanning bed); Wyo. Stat. Ann. § 8-1-102(a)(i) (LexisNexis 2013) (defining "adult" as "a person who is not a minor"); Wyo. Stat. Ann. § 8-1-102(a)(iii)(B) (LexisNexis 2013) (defining "minor" as "a person who has not yet reached the eighteenth anniversary of his birth").

953. Thus, even assuming, *arguendo*, that the original sentencing court's decision to impose a 40 percent departure was at one point law of the case, *Pepper III* effectively wiped the slate clean. To be sure, *Pepper III* vacated Pepper's 24-month sentence on grounds unrelated to the substantial assistance departure, but that fact does not affect our conclusion. "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *United States v. Stinson*, 97 F.3d 466, 469 (C.A.11 1996) *(per curiam)*. Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," *United States v. White*, 406 F.3d 827, 832 (C.A.7 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw v. United States*, 554 U.S. 237, 253, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008).

*Id*. at 1251.

[¶31] When the United States Supreme Court vacated the judgment in *Bear Cloud I*, it wiped the slate clean. We remand for the district court to consider the entire sentencing package – that is, the sentences for all three counts – when it resentences Mr. Bear Cloud.

[¶32] We next turn to the question of whether a lengthy aggregate sentence for closely-related crimes whose practical effect is that the juvenile offender will spend his lifetime in prison triggers the Eighth Amendment protections set forth by the United States Supreme Court in *Miller*.

[¶33] We hold that the teachings of the *Roper/Graham/Miller* trilogy require sentencing courts to provide an individualized sentencing hearing to weigh the factors for determining a juvenile's "diminished culpability and greater prospects for reform" when, as here, the aggregate sentences result in the functional equivalent of life without parole. To do otherwise would be to ignore the reality that lengthy aggregate sentences have the effect of mandating that a juvenile "die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2460. Such a lengthy sentence "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the juvenile convict], he will remain in prison for the rest of his days.'" *Graham*, 560 U.S. at 70, 130 S.Ct. at 2027 (quoting *Naovarath v. State*, 779 P.2d 944, 944 (1989)). That is exactly the

result that *Miller* held was unconstitutional. *Miller*, 567 U.S. at ---, 132 S.Ct. at 2460. Like the Indiana Supreme Court, we will "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Brown v. State*, 10 N.E.3d 1, 8 (Ind. 2014). Like the Iowa Supreme Court, "we do not believe the determination of whether the principles of *Miller* or *Graham* apply in a given case should turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates." *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013). We decline to make any projections of Mr. Bear Cloud's life expectancy based on the Michigan data presented by Mr. Bear Cloud, which seems to demonstrate that the life expectancy of incarcerated youthful offenders is significantly reduced compared to that of the general population.[7]

[¶34] In *Null*, the court answered the question of "whether a 52.5-year minimum prison term for a juvenile based on the aggregation of mandatory minimum sentences for second-degree murder and first-degree robbery triggers the protections to be afforded under *Miller*" in the affirmative. *Id.* at 71. It held that "[t]he prospect of geriatric release, if one is to be afforded the opportunity for release at all, does not provide a 'meaningful opportunity' to demonstrate the 'maturity and rehabilitation' required to obtain release and reenter society as required by *Graham*, 560 U.S. at 74, 130 S.Ct. at 2030, 176 L.Ed.2d at 845-46." *Id.* We find the reasoning of the Iowa Supreme Court to be persuasive. As a practical matter, a juvenile offender sentenced to a lengthy term-of-years sentence will not have a "meaningful opportunity for release." The United States Sentencing Commission recognizes this reality when it equates a sentence of 470 months (39.17 years) to a life sentence. U.S. Sentencing Commission Preliminary Quarterly Data Report (through March 31, 2014), at 8.[8] The juvenile who will likely die in prison is entitled to the Eighth Amendment's presumption "that children are constitutionally different from adults for sentencing purposes," and that they "have diminished culpability and greater prospects for reform." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2458, 2464. A juvenile offender sentenced to a lengthy aggregate sentence "should not be worse off than an offender sentenced to life in prison without parole who has the benefit of an individualized hearing under *Miller*." *Null*, 836 N.W.2d at 72.

[¶35] *Null* relied heavily on the reasoning of the United States Supreme Court in the *Roper/Graham/Miller* trilogy; but its decision rested on Article I, section 17 of the Iowa Constitution, whose language is identical to the Eighth Amendment – "cruel and unusual

---

[7] *See* http:/fairsentencingofyouth.org/wp-content/uploads/2010/02/Michigan-Life-Expectancy-Data-Youth-Serving-Life.pdf.

[8] http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2014-Quarter-Report-2nd.pdf.

punishment shall not be inflicted." *Null*, 836 N.W.2d at 56-68, 70-75.[9] Other state courts have held that *Miller* and *Graham* apply to lengthy or aggregate sentences without resorting to their state constitutions. *See Brown v. State*, 10 N.E.3d 1, 7-8 (Ind. 2014); *Fuller v. State*, 9 N.E.3d 653, 657-58 (Ind. 2014); *People v. Caballero*, 282 P.3d 291, 295 (Cal. 2012). The Ninth Circuit Court of Appeals likewise found that *Graham* applies to a lengthy term of years sentence. *Moore v. Biter*, 725 F.3d 1184, 1193-94 (9th Cir. 2013). The Sixth Circuit Court of Appeals and the Supreme Court of Louisiana have found, conversely, that *Miller* and *Graham* do not apply to aggregate sentences. *Bunch v. Smith*, 685 F.3d 546, 550-53 (6th Cir. 2012); *State v. Brown*, 118 So.3d 332, 335-42 (La. 2013). The supreme courts of Colorado and Florida have not yet weighed in on whether aggregate sentences that create *de facto* life imprisonment violate the Constitution. However, the intermediate appellate courts in both states have come down on both sides of the issue. *See People v. Rainer*, No. 10CA2414, 2013 WL 1490107, at *12-15 (Colo. App. April 11, 2013) (not reported) (112-year aggregate violates constitution); *People v. Lehmkuhl*, No. 12CA1218, 2013 WL 3584754, at *2-4 (Colo. App. June 20, 2013) (not reported) (no violation for aggregate sentence of 76 years); *People v. Lucero*, No. 11CA2030, 2013 WL 1459477, at *2-4 (Colo. App. April 11, 2013) (not reported) (no violation for 84-year sentence); *Floyd v. State*, 87 So.3d 45, 46-47 (Fla. Dist. Ct. App. 2012) (80-year aggregate sentence violates the Constitution); *Walle v. State*, 99 So.3d 967, 973 (Fla. Dist. Ct. App. 2012) (92-year aggregate sentence not a violation); *Smith v. State*, 93 So.3d 371, 373-75 (Fla. Dist. Ct. App. 2012) (aggregate sentence of 80 years not a violation); *Henry v. State*, 82 So.3d 1084, 1086-89 (Fla. Dist. Ct. App. 2012) (no violation for an aggregate sentence of 90 years).[10]

---

[9] The Iowa Supreme Court has now extended its holding to find that the Iowa Constitution prohibits any mandatory sentencing of a juvenile. *State v. Lyle*, No. 11-1339, 2014 WL 3537026, at *20 (Iowa S.Ct. July 18, 2014) (not reported).

[10] Other state intermediate courts have decided both for and against the application of *Miller* and *Graham* to aggregate and lengthy sentences. *Teinert v. State*, No. 01-13-00088-CR, 2014 WL 554677, at *3 (Tex. App. February 11, 2014) (not reported) (25-year sentence not a violation); *State v. Merritt*, No. M2012-00829-CCA-R3CD, 2013 WL 6505145, at *4-7 (Tenn. Crim. App. December 10, 2013) (not reported) (225-year sentence did not violate *Graham*, but did violate the "purposes and principles" of sentencing); *State v. Houseknecht*, No. A-1139-11T3, 2013 WL 5729829, at *2-4 (N.J. Super. Ct. App. Div. October 23, 2013) (not reported) (no violation for a 30-year minimum sentence); *People v. Aponte*, 981 N.Y.S.2d 902, 905-06 (N.Y. Sup. Ct. 2013) (no violation for a 50.8-year sentence); *State v. Watkins*, No. 13AP-133, 13AP-134, 2013 WL 6708397, at *4-6 (Ohio Ct. App. December 17, 2013) (not reported) (67-year sentence did constitute a violation); *People v. Allen*, No. 1-10-2884, 1-13-0174, 2013 WL 5493999, at *5-10 (Ill. App. Ct. September 30, 2013) (sentence of 52 years constituted a violation); *State v. James*, No. A-4153-08T2, 2012 WL 3870349, at *13-14 (N.J. Super. Ct. App. Div. September 7, 2012) (not reported) (268-year minimum sentence did not constitute a violation); *Middleton v. State*, 721 S.E.2d 111, 113 (Ga. Ct. App. 2011) (no violation for a 30-year sentence); *State v. Kasic*, 265 P.3d 410, 415-16 (Ariz. Ct. App. 2011) (a sentence of 139.75 years did not violate the Constitution); *State v. Sanders*, No. 2012AP1517, 2014 WL 3819456, ¶¶ 14-15 (Wis. Ct. App. August 5, 2014) (not reported) (minimum sentence of 35 years did not constitute a violation as there was a meaningful opportunity for release).

[¶36] On remand, the district court should weigh the entire sentencing package,[11] and in doing so it must consider the practical result of lengthy consecutive sentences, in light of the mitigating factors of youth which have been set forth in this opinion, and in *Miller*, *Bear Cloud II*, and the district court's Corrected Judgment and Sentence of September 25, 2013. The district court must also be mindful of the rule set forth by the United States Supreme Court that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. at 1240 (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)); *see also Wasman v. United States*, 468 U.S. 559, 564, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984). The district court is free to consider a wide range of factors when exercising its sentencing discretion, *see, e.g., Magnus v. State*, 2013 WY 13, ¶ 25, 293 P.3d 459, 468 (Wyo. 2013). The murder of Robert Ernst understandably "rocked the foundation of the community." The *Roper* Court recognized the perils of including such a factor in the sentencing determination when it rejected the use of a case-by-case approach to proportionality rather than a categorical exclusion of the death penalty for juveniles, explaining that an "unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less severe than death." *Roper*, 543 U.S. at 572-73, 125 S.Ct. at 1197.

[¶37] Mr. Bear Cloud may be among "[t]hose who commit truly horrifying crimes as juveniles [who] turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives." *Graham*, 560 U.S. at 75, 130 S.Ct. at 2030. However, "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Miller*, 567 U.S. at ---, 132 S.Ct. at 2469. The United States Supreme Court's Eighth Amendment jurisprudence requires that a process be followed before we make the judgment that juvenile "offenders never will be fit to reenter society." *Graham*, 560 U.S. at 75, 130 S.Ct. at 2030. That process must be applied to the entire sentencing package, when the sentence is life without parole, or when aggregate sentences result in the functional equivalent of life without parole.

---

[11] The district court attempted to cover its bases when it included this language in its Corrected Judgment and Sentence: "The decision in *Bear Cloud v. State, id.*, made clear that the sentences in Counts 2 and 3 were not before the Court but to the extent some may believe the Court was authorized to reconsider those sentences, the Court would have re-affirmed those sentences in any event[.]" This cursory consideration of the other sentences does not, however, suffice to meet the *Miller* requirements.

14

***II.*** ***Does Wyoming's mandatory identical sentencing structure for accessory and principal actors in felony murder – which imposes a mandatory life sentence – violate the Eighth Amendment of the United States Constitution when applied to juveniles?***

[¶38] Mr. Bear Cloud contends that Wyoming's mandatory sentencing for juvenile homicide offenders who were not the principal actors is unconstitutional. We approach this issue mindful of two important limits to our analysis of the constitutionality of Wyoming's statutory sentencing scheme. First, Appellant's argument relies entirely on the United States Constitution. The interpretations of the United States Supreme Court "should be and are dispositive of any federal constitutional questions raised in the courts of this state." *Nehring v. Russell*, 582 P.2d 67, 74 (Wyo. 1978); U.S. Const. art. VI; Wyo. Const. art. 1, § 37. State courts can only create and expand rights established by the United States Supreme Court when they do so unambiguously on state law grounds. "Otherwise, state courts could, in effect, blame the Federal Constitution for imposing what are really phantom constitutional restrictions on state government." John E. Nowak & Ronald D. Rotunda, *Constitutional Law*, § 2.13, at 113 (8th ed. 2010). *See also Michigan v. Long*, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983) (explaining that if the adequate and independent state ground for a state court decision is not clear, the United States Supreme Court will assume "that the state court decided the case the way it did because it believed that federal law required it to do so").

[¶39] Second, we recognize the "substantial deference" that must be accorded the legislature in establishing sentences. *Martin v. State*, 720 P.2d 894, 898 (Wyo. 1986) (citing *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 3009-10 n.16., 77 L.Ed.2d 637 (1983)).

> The party challenging the constitutionality of a statute bears the burden of proving the statute is unconstitutional. That burden is a heavy one "in that the appellant must 'clearly and exactly show the unconstitutionality beyond any reasonable doubt.'" In our analysis, we presume "the statute to be constitutional. . . . Any doubt in the matter must be resolved in favor of the statute's constitutionality."

*Powers v. State*, 2014 WY 15, ¶ 7, 318 P.3d 300, 303 (Wyo. 2014) (internal citations omitted).

[¶40] Although we recognize there is merit in the proposition that a mandatory life sentence for a juvenile is contrary to the rationale underlying the *Roper/Graham/Miller* trilogy, we will not find a phantom constitutional restriction that the United States

15

Supreme Court has declined the opportunity to recognize.[12]  Unlike the previous issue regarding the application of *Miller* to aggregate sentences, which we find to be a logical application of the *Miller* rationale, and which was not considered by the *Miller* Court, the imposition of mandatory life sentences on an accomplice was before the Court in *Miller*.

[¶41]  As Chief Justice Roberts observed in his *Miller* dissent, "[t]he principle behind today's decision seems to be only that because juveniles are different from adults, they must be sentenced differently. . . .  There is no clear reason that principle would not bar all mandatory sentences for juveniles, or any juvenile sentence as harsh as what a similarly situated adult would receive."  *Miller*, 567 U.S. at ---, 132 S.Ct. at 2482 (Roberts, C.J., dissenting).  However, that is not what the *Miller* majority held.

[¶42]  The holding in *Miller* is restricted to the need to weigh the mitigating factors of youth in imposing the "particular penalty" of life without parole.  *Miller*, 567 U.S. at ---, 132 S.Ct. at 2471.  A number of state courts have held, in the wake of *Miller*, that its reasoning "does not necessarily extend to mandatory sentences that afford the possibility of release."  *Commonwealth v. Brown*, 1 N.E.3d 259, 267 (Mass. 2013) (observing that "[i]f the Court in *Miller* had intended to invalidate all mandatory life sentences for juveniles, it could have reached that issue.  Instead, *Miller*'s holding was decidedly narrow[.]").  *See also Commonwealth v. Batts*, 66 A.3d 286, 296 (Pa. 2013) (recognizing that *Miller*'s rationale "militates in favor of individualized sentencing hearings for those under the age of eighteen both in terms of minimum and maximum sentences," but expressing reluctance to go further than the Supreme Court, which "neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile"); *Ouk v. State*, 847 N.W.2d 698, 701 (Minn. 2014) (holding that life sentence with the possibility of release after 30 years "does not violate the rule announced in *Miller* because it does not require the imposition of the harshest term of imprisonment: life imprisonment without the possibility of release").

[¶43]  Both juveniles in *Miller* were sentenced under mandatory life sentence statutes.  The *Miller* Court did not hold that mandatory life sentences for juveniles were unconstitutional; it only held that a certain process must be followed before imposition of a sentence of life without parole.  Like the courts of Massachusetts, Pennsylvania and Minnesota, we conclude that we cannot extend the protections of the United States Constitution to all mandatory life sentences for juveniles, when the United States Supreme Court has declined the opportunity to do so.

---

[12]Mr. Bear Cloud was not sentenced under the current version of Wyo. Stat. Ann. § 6-10-301, but he was nevertheless sentenced under a statute which required imposition of a mandatory life sentence, so we will address the issue.

16

[¶44] The same reasoning applies to Mr. Bear Cloud's challenge to the Wyoming Statutes' mandatory sentencing scheme that imposes the same sentence for a juvenile accessory as for the person actually committing the murder. Wyo. Stat. Ann. §§ 6-1-201, 6-2-101(b). *Miller* dictates that sentencing courts must consider the individual circumstances of each juvenile, including whether he is "the shooter [or] the accomplice," *Miller*, 567 U.S. at ---, 132 S.Ct. at 2467-68. Mr. Bear Cloud argues that consideration would be pointless if the sentence is the same in any case. He cites *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 3376, 73 L.Ed. 1140 (1982), in which the United States Supreme Court held that the Eighth Amendment proscribed the death penalty for a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed;" and *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed. 127 (1987), for the proposition that adult offenders who did not commit the actual murder cannot be sentenced to death without a showing of significant participation in the felony and either an intent to kill or a reckless indifference to human life.

[¶45] The State responds that Mr. Bear Cloud has already raised the same issue in *Bear Cloud I* and is barred by the doctrine of the law of the case from raising it again. However, the United States Supreme Court's rejection of the law of the case doctrine after a case has been vacated on appeal in *Pepper v. United States*, 131 S.Ct. at 1251, *see supra ¶ 30*, lays waste to that argument. The judgment in *Bear Cloud I* was vacated by the United States Supreme Court, and that "effectively wiped the slate clean." *Id.*

[¶46] As we have recognized, "[t]he felony murder rule is the subject of much criticism for its potential harshness, for instance in the circumstance where the killing is an independent act of a co-felon[.]" *Mares v. State*, 939 P.2d 724, 728 (Wyo. 1997) (citing Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law*, § 7.5(c), at 622-40 (2d.ed. 1986); Nelson E. Roth & Scott E. Sundby, *The Felony-Murder Rule: A Doctrine at Constitutional Crossroads*, 70 Cornell L.Rev. 446, 446-48 (1985)). [13] In *Graham*, the

---

[13] *See People v. Miller*, 781 N.E.2d 300, 341 (Ill. 2002) (in case of 15-year-old lookout convicted of felony murder, court held "mandatory sentence of natural life in prison with no possibility of parole grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community"); *Arrington v. State*, 113 So.3d 20, 26 (Fl. App. 2012), *review denied*, 104 S.3d 1087 (Fla. 2012) ("[S]tatutorily mandated life-without-parole sentence for felony murder may lead to grossly disproportionate sentences in some cases."); *Kills On Top v. State*, 928 P.2d 182, 412-24 (Mont. 1996) (imposition of death sentence based on felony murder was disproportionate); Emily C. Keller, *Constitutional Sentences for Juveniles Convicted of Felony Murder in the Wake of Roper, Graham & J.D.B*, 11 Conn. Pub. Int. L.J. 297, 302-06, 315-16 (2012); Mariko K. Shitama, Note, *Bringing Our Children Back from the Land of Nod: Why the Eighth Amendment Forbids Condemning Juveniles to Die in Prison for Accessorial Felony Murder*, 65 Fla. L. Rev. 813, 840-48 (2013); Richard W. Garnett, *Depravity Thrice Removed: Using The "Heinous, Cruel, or Depraved" Factor to Aggravate Convictions of Nontriggermen Accomplices in Capital Cases*, 103 Yale L.J. 2471, 2493-99 (1994); Richard A. Rosen, *Felony Murder and the Eighth Amendment Jurisprudence of Death*,

Supreme Court "recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." 560 U.S. at 69, 130 S.Ct. at 2027 (citing *Kennedy v. Louisiana*, 554 U.S. 407, 419, 128 S.Ct. 2641, 2649, 171 L.Ed.2d 525 (2008); *Enmund*, 458 U.S. 782, 102 S.Ct. 3368; *Tison*, 481 U.S. 137, 107 S.Ct. 1676; and *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977)); *see also Poitra v. State*, 2012 WY 58, ¶ 27, 275 P.3d 478, 484-85 (Wyo. 2012) (recognizing that "a specific case should reflect the specific defendant" and accomplices need not necessarily be sentenced the same as the actor).

[¶47] Although the Court's recognition that an offender's non-shooter status is one of the factors to be considered seems to conflict with the imposition of a mandatory sentence for accomplices, the *Miller* Court declined to make that finding, even though it had exactly that fact situation in front of it in the case of Kuntrell Jackson, a non-shooter who received a mandatory sentence under Arkansas's felony-murder statute. *Miller*, 567 U.S. at ---, 132 S.Ct. at 2461. Justice Breyer wrote an eloquent concurring opinion in which he criticized the application of "transferred intent" to find Kuntrell Jackson guilty of murder, saying "there is no basis for imposing a sentence of life without parole upon a juvenile who did not himself kill or intend to kill." *Id.* at ---, 132 S.Ct. at 2476 (Breyer, J. concurring). Only one other justice joined in that concurrence. In light of the United State's Supreme Court's unwillingness to extend the Eighth Amendment's protections to accomplices, we will also refrain from doing so.

### III. Is the district court's sentence of 20-25 years for aggravated burglary unconstitutional as grossly disproportionate?

[¶48] The district court initially sentenced Mr. Bear Cloud to life in prison for first-degree murder on Count I; 20 to 25 years in prison for conspiracy to commit aggravated burglary in Count II, to be served concurrently with the murder count; and 20 to 25 years in prison for the aggravated burglary in Count III, to be served consecutively to Counts I and II. We do not address this issue because, on remand, the district court will reconsider this sentence, following a *Miller* hearing, in light of the entire sentencing package.

### CONCLUSION

[¶49] We reverse and remand to the district court for resentencing in accordance with this opinion.

---

31 B.C. L. Rev. 1103, 1113-17 (1990); Lily Kling, Note, *Constitutionalizing the Death Penalty for Accomplices to Felony Murder*, 26 Am. Crim. L. Rev. 463, 463-64, 482 (1988); Lynn D. Wittenbrink, Note, *Overstepping Precedent? Tison v. Arizona Imposes the Death Penalty on Felony Murder Accomplices*, 66 N.C. L. Rev. 817, 833-34, 835-36 (1988).