IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85902-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| MARVIN LOFI LEO, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, C.J. — In 1998, 17-year-old Marvin Leo and several accomplices orchestrated a mass shooting in Tacoma's International District. Leo was charged with five counts of aggravated murder in the first degree and five counts of assault in the first degree. Each charge carried a firearm enhancement. He pleaded guilty and was sentenced to mandatory life without the possibility of parole plus 1,100 months to run consecutively to his life sentence. In 2016, Leo was resentenced under the Miller-fix statutes. After considering Leo's youthfulness as a mitigating factor, the resentencing court imposed a minimum term of 40 years to life, with all counts to be served concurrently. Leo appeals, contending that the new sentence is an unconstitutional de facto life sentence. Because the resentencing court properly focused on Leo's youth as a mitigating factor and because the new sentence allows Leo a meaningful opportunity for life outside of prison, we disagree and affirm.

FACTS

In the early morning hours of July 5, 1998, Marvin Leo and several other accomplices opened fire into the Trang Dai Café in Tacoma, Washington, killing five people and injuring five others.  Leo was 17 years old at the time.

Following his arrest, Leo pleaded guilty to five counts of aggravated murder in the first degree and five counts of aggravated assault in the first degree.  Each of the ten charges carried a 60-month firearm enhancement mandated to run consecutively.  In February 2000, Leo was sentenced to life without the possibility of parole plus 1,100 months to run consecutively to his life sentence.

In 2016, Leo was resentenced under the Miller[1]-fix statutes, RCW 10.95.030 and RCW 10.95.035.  At the resentencing hearing, forensic psychologist Dr. Nathan Henry testified that Leo presented a moderate to low risk of future dangerousness.  Dr. Henry also testified about Leo's challenging childhood and family life, his eventual gang involvement, and his efforts toward rehabilitation while incarcerated.  Dr. Henry noted that "adolescents who are going through difficult transition times . . . may be more prone to seek connection and support in ways that can be problematic."  Therefore, Dr. Henry explained, it was "not surprising" that Leo sought out the acceptance of a gang.  Dr. Henry also noted that Leo had taken advantage of opportunities for self-improvement

---

[1]  Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

while incarcerated, including taking an anger management class, a cognitive behavioral life skills class, and a substance abuse class.

Leo requested a 30-year minimum term, with all counts and sentencing enhancements to be served concurrently. The State recommended that the court impose five consecutive terms of 25 years to life for each murder charge.

 The resentencing court found that Leo's "vulnerability and risk level for criminal behavior in 1998 was exacerbated [b]y a confluence of factors," including his "youth and his brain development," which "contributed to his poor decision making and susceptibility to peer pressure." The court also found that Leo was "particularly vulnerable because it was a tumultuous time in his life," that he was "exposed to a history of domestic violence and conflicts between his parents and alcohol abuse by his parents," and that he was exposed to "environmental violence when his family resettled in . . . an area known for gang violence and criminal activity." The court noted that as an adult, Leo "does not exhibit the traits associated with increased risk of violence" and that he had "matured" since the time of the crimes. The court concluded that Leo's youth mitigated his crimes and that an exceptional sentence downward was warranted. The court then imposed a minimum of 40 years to life on each count, with all counts and corresponding firearm enhancements to run concurrently.

Leo appeals.

ANALYSIS

On appeal, Leo contends that the court erred by imposing a de facto life sentence of 40 years on each count. We disagree.

3

Because " '[c]hildren are different' " from adults, "our criminal justice system [must] address this difference when punishing children." In re Pers. Restraint of Ali, 196 Wn.2d 220, 225, 474 P.3d 507 (2020) (first alteration in original) (quoting State v. Houston-Sconiers, 188 Wn.2d 1, 8, 391 P.3d 409 (2017)). For youth to be a mitigating factor justifying an exceptional sentence below the standard range, a juvenile offender must show that their immaturity, impetuosity, or failure to appreciate the risks and consequences contributed to the commission of their crime. State v. Anderson, 200 Wn.2d 266, 285, 516 P.3d 1213 (2022). A juvenile offender can satisfy this burden by presenting " 'relevant mitigation evidence bearing on the circumstances of the offense and the culpability of the offender, including both expert and lay testimony as appropriate.' " State v. Haag, 198 Wn.2d 309, 321, 495 P.3d 241 (2021) (quoting State v. Delbosque, 195 Wn.2d 106, 121, 456 P.3d 806 (2020)).

At a Miller-fix resentencing hearing, the court " 'must meaningfully consider how juveniles are different from adults, how those differences apply to the facts of the case, and whether those facts present the uncommon situation where' the juvenile offender is just as culpable as an adult offender." Anderson, 200 Wn.2d at 285 (quoting State v. Ramos, 187 Wn.2d 420, 434, 387 P.3d 650 (2017)). " 'The sentencing court must thoroughly explain its reasoning, specifically considering the differences between juveniles and adults identified by the Miller Court and how those differences apply to the case presented.' " Haag, 198 Wn.2d at 321 (quoting Ramos, 187 Wn.2d at 444). And though the court must focus on the mitigating qualities of youth, it must also consider the facts of

the case, including facts that may weigh in favor of punishment. Anderson, 200 Wn.2d at 286. If the court determines that a juvenile offender's crimes reflect those mitigating youthful characteristics, the court cannot impose a de facto life sentence that "creates an unacceptable risk that the juvenile offender will die in prison or have no meaningful opportunity to reenter society." Anderson, 200 Wn.2d at 286.

" 'We will reverse a sentencing court's decision only if we find a clear abuse of discretion or misapplication of the law.' " Haag, 198 Wn.2d at 317 (quoting Delbosque, 195 Wn.2d at 116). The court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. Haag, 198 Wn.2d at 317. The court's decision is based on untenable grounds if its factual findings are unsupported by the record. Delbosque, 195 Wn.2d at 116. " 'We review findings of fact for substantial evidence,' which 'exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.' " Haag, 198 Wn.2d at 317 (quoting Delbosque, 195 Wn.2d at 116).

Leo asserts that his 40-year sentence constitutes an impermissible de facto life sentence. We are not persuaded. Our Supreme Court's recent decision in Haag is instructive.

In Haag, our Supreme Court concluded that a 46-year sentence given to a 17-year-old constituted an unconstitutional de facto life sentence. 198 Wn.2d at 317. The court explained that "[a] juvenile sentenced to be released at the age of 63 has lost incalculably more than an adult in the same circumstances, the ability

to work, to vote, or even to operate a motor vehicle." Haag, 198 Wn.2d at 329. The court then opined that "releasing Haag from confinement at the age of 63 deprives him of a meaningful opportunity to return to society, depriving him of a meaningful life." Haag, 198 Wn.2d at 329. In reaching this conclusion, the court in Haag relied on out-of-state cases that considered similarly long sentences and concluded that they were de facto life sentences. 198 Wn.2d at 328 (citing State v. Zuber, 227 N.J. 422, 448, 152 A.3d 197 (2017) (55-year minimum sentence for juvenile is the "practical equivalent of life without parole"); Bear Cloud v. State, 2014 WY 113, ¶¶ 11, 33, 334 P.3d 132 (2014) (45-year minimum sentence was the "functional equivalent of life without parole"); State v. Null, 836 N.W.2d 41, 70-71 (Iowa 2013) (52.5-year minimum term "is sufficient to trigger Miller-type protections")).

The present case is distinguishable from Haag. Here, the court imposed a 40-year sentence, rather than the longer sentences that were imposed in Haag and the out-of-state cases considered by the court in Haag. The charges at issue here are also far more severe than those in Haag—five counts of aggravated murder in the first degree as compared to one. And at 57 years old, Leo will still have a meaningful opportunity to return to society and to have a meaningful life outside of prison. Unlike the defendant in Haag, Leo will have ten years until he reaches the normal federal retirement age.[2] Leo will also be automatically eligible to vote, unlike the defendant in Haag. Compare RCW

---

[2] See Normal Retirement Age, SOC. SEC. ADMIN., https://www.ssa.gov/oact/progdata/nra.html [https://perma.cc/N626-XQ3Q].

29A.08.520(1) (right to vote is automatically restored for individuals with felony convictions) with former RCW 29A.08.520(1) (2013) (right to vote is provisionally restored for individuals with felony convictions).  He will have several years to " 'exercise the rights and responsibilities of adulthood,' " such as establishing a career.  Haag, 198 Wn.2d at 327 (quoting Casiano v. Comm'r of Corr., 317 Conn. 52, 77, 115 A.3d 1031 (2015)).  We also note that Leo has shown a commendable dedication to rehabilitation while incarcerated which is precisely why the Miller-fix statutes were created.  However, we disagree that the resentencing court imposed a de facto life sentence.

     We affirm.

_Smith, C.J._

WE CONCUR:

_Chung, J._          _Hazelrigg, A.C.J._